IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| CARLOS RAY KIDD, #1079464 | § | |
| VS. | § | CIVIL ACTION NO. 9:10cv57 |
| RICK PERRY, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Carlos Ray Kidd, a prisoner confined at the Gib Lewis Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on April 22, 2010. The Plaintiff alleged that the Defendants have not provided for his safety. On July 22, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. A *Spears* hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Ginger Lively, Assistant Warden William Motal and Nurse Tara Patton testified under oath about prison policies and information contained in the Plaintiff's prison records.

1

The starting point in discussing the Plaintiff's problems must begin with the fact that he was brutally raped by Officer David M. Larsen at the Coffield Unit in 2003. The Plaintiff sued Larsen and a settlement was reached in *Kidd v. Larsen*, No. 6:03cv352 (E.D. Tex. March 14, 2008). The rape and lawsuit that followed made the Plaintiff well known in prison, and he became a marked man. He has filed several lawsuits alleging that his life was in danger. His most recent lawsuit that was filed before the present lawsuit was *Kidd v. Livingston*, No. 6:09cv342, which was filed on July 29, 2009. The lawsuit is still pending and concerns the Plaintiff's problems following the rape, particularly his problems while confined at the Michael Unit. He acknowledged that prison officials recognized that his life was in danger and transferred him from the Michael Unit to the Darrington Unit. The Plaintiff asked to be placed in federal custody in that lawsuit.

In the present lawsuit, the Plaintiff stated that he complained to officials at the Darrington Unit that his life was in danger, and he was transferred to the Gib Lewis Unit in January 2010. He testified that his life is still in danger. He acknowledged that he is confined in a single man cell in administrative segregation. He is escorted by officers any time he is removed from his cell. Every inmate confined in his housing area must be escorted by officers any time they are outside of their cells. The safety steps employed by the prison system are designed to keep inmates away from him.

The Plaintiff testified that it is not safe despite the precautions employed by the prison system. He testified that Officer Larsen had a close relationship with members of the Aryan Brotherhood gang. They did not take kindly to his lawsuit against Larsen. Members of the Aryan Brotherhood are housed in his area, and they have every intention of killing him. On May 10, 2010, a member of the Aryan Brotherhood housed near him used a slingshot to strike him in the face. Prior to the attack, the Plaintiff identified members of the Aryan Brotherhood housed in his cell block and brought their

names to the attention of Gib Lewis officials. Nonetheless, they did not take any steps to protect him until after the attack. He was moved to a new cell immediately after the attack and then to a different housing area two and one-half weeks later. The responses he has received to his grievances and life-in-danger requests point out that he is already being provided the highest level of protection available. Warden Motal similarly testified that he is being provided the highest level of protection available in the prison system.

It is noted that the Plaintiff filed the present lawsuit before the attack on May 10, 2010. He testified that he had not been attacked at any other time while confined at the Gib Lewis Unit. He, nonetheless, stressed that it is not safe. He has seen three inmates attacked at the Gib Lewis Unit despite safety measures employed by prison officials. With respect to the attack on May 10, 2010, officials were aware about his concern for his safety to the extent that he provided them a list of inmates belonging to the Aryan Brotherhood gang that were housed in his area. He provided Gib Lewis officials with only generalized notices of threats to his safety, as opposed to providing them with detailed discussions of specific threats made by particular inmates belonging to the Aryan Brotherhood.

The Plaintiff testified that he needs to be transferred out of the Texas prison system. In his complaint, he asked for both monetary damages and a transfer to an institution outside of the Texas prison system. During the *Spears* hearing, he stressed that, more than anything else, he wants a transfer. He sued Governor Perry because he is the person who must approve a transfer to another system based on a prisoner exchange. He also sued Attorney General Greg Abbott and TDCJ Board Chairman Bell in an effort to get a transfer. The Plaintiff testified that TDCJ Ombudsman Ralph Bales talked to him and indicated that there was not much more that the prison system could do in his behalf. Bales stressed that he had been repeatedly transferred within the system when the need became

apparent. The Plaintiff testified that he sued Bales for ignoring his need for safety and failing to do more in his behalf. The Plaintiff sued several administrative and classification officials for failing to protect him, including Director Brad Livingston, former Director Nathaniel Quarterman, Chief of State Classification Larry LeFlore, Region I Director Kevin Mayfield, Warden Binsel, Major Bryant and Unit Chief of Classification Williams. He also sued former Officer David M. Larsen once again.

The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.* "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prisoner does not have a basis for a civil rights claim for failure to protect simply because he disagrees with the classification decision made by classification officials. *Neals v. Norwood*, 59 F.3d 530 (5th Cir. 1995). With respect to the Plaintiff's desire to be transferred to an institution outside of the Texas prison system, he does not have a constitutional right to be confined in a particular location. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976). On the other hand, the Fifth Circuit has upheld a district court's decision ordering a prison system to remove inmates from a particular facility and to place them in an institution selected by the defendants, where their safety could be assured. *Streeter v. Hopper*, 618 F.2d 1178, 1182 (5th Cir. 1980).

The Plaintiff has not alleged facts giving rise to an inference that the Defendants have been deliberately indifferent to his safety. Quite the contrary, he acknowledged that prison officials have taken steps to provide for his safety. They have been responsive to his concerns. They have not ignored him. He has been transferred to various units because of concerns for his safety. He has been placed in a single man cell in administrative segregation in order to provide for his safety. He has been transferred to different cells and different areas within the Gib Lewis Unit when it became apparent that his safety was in jeopardy. He is being provided the highest level of protection available in the prison system. The facts as alleged and developed do not support a deliberate indifference claim. The Plaintiff does not have a basis for a meritorious deliberate indifference claim just because his desire to be placed in some other prison system, particularly the federal system, has not been honored.

With respect to *Streeter v. Hopper*, the Court cannot say at this juncture that all options within the Texas prison system have been exhausted and that nothing remains other than a transfer to another system. The Court recognizes that Ralph Bales' comment that the prison system could not do much more in his behalf gives rise to an inference that all options available within the Texas prison system may be close to being exhausted, but that situation has not yet been reached. The facts as alleged and developed do not support a conclusion that the Defendants have been deliberately indifferent to the Plaintiff's safety and that there is no other option available to the Court at this time but to grant him injunctive relief to compel Texas prison officials to transfer him to another prison system or institution where his safety can be assured.

The Court notes that the Plaintiff sued many of the same prison officials in Civil Action Number 6:09cv342 that he is suing in the present lawsuit, including Brad Livingston, Nathaniel Quarterman and Larry LeFlore. Judge Love dismissed the Plaintiff's claims against these supervisory

officials on May 26, 2010. As was noted in that case, in order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). None of these individuals participated in any alleged acts of misconduct. They were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Williams v. Luna*, 909 F.2d 121 (5th Cir. 1990). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied. The Plaintiff has not shown that he has a basis for a civil rights lawsuit against any of the supervisory officials. Judge Love's conclusion in Civil Action No. 6:09cv342 is equally applicable in this case. The Plaintiff's claims against these supervisory officials should be dismissed.

Finally, the Plaintiff has once again sued former officer David M. Larsen. He also sued him in Civil Action No. 6:09cv342. The reasoning for dismissing Larsen in Civil Action No. 6:09cv342 is likewise applicable to the present case. Larsen has not been an employee at the Gib Lewis Unit while the Plaintiff has been confined there. As Judge Love noted, Larsen's employment ceased prior to the settlement in Civil Action No. 6:03cv352. The Plaintiff may not maintain another lawsuit against Larsen unless he shows that Larsen violated his constitutional rights and was acting under color of state law. *Daniel v. Ferguson*, 839 F.2d 1124 (5th Cir. 1988). He has not shown that Larsen played any role in any of the events involving the Plaintiff at the Gib Lewis or, even if he was involved in

such actions, that he acted under color of state law. The Plaintiff successfully sued Larsen in another lawsuit, but he cannot continually include him as a defendant in every new lawsuit that he files just because his problems began as a result of Larsen's unconstitutional behavior in 2003.

The Court notes that he may not repeatedly bring the same claims against the same people in new lawsuits. To the extent that he is bringing the same claims against the same people, his lawsuit should be dismissed as repetitious under 28 U.S.C. § 1915. *See Mayfield v. Collins*, 918 F.2d 560, 561 (5th Cir. 1990); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988).

In conclusion, the Plaintiff's claims in this lawsuit fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the civil rights complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **23** day of **July, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE